## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 2:21-10609 |
| UTC LABORATORIES, LLC | * | SECTION "A" |
| DEBTOR | * | CHAPTER 11 |

### MOTION OF ALISON J. DIBOLL FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE MEREDITH S. GRABILL,
UNITED STATES BANKRUPTCY JUDGE:

Now into Court, through undersigned counsel, comes Alison J. Diboll ("Ms. Diboll"), who files this Motion (the "Motion") for relief from the Automatic Stay pursuant to 11 U.S.C. § 362, and who avers as follows:

### Jurisdiction, Venue, and Statutory Predicates

1.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding.

3.      The statutory predicates for the relief requested herein are sections 362(d), of title 11 of the United States Code (the "Bankruptcy Code"), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Rule(s)") and Local Rule 4001-1 of this Court.

### Background

4.      On May 3, 2021, UTC Laboratories, LLC ("Debtor") filed a voluntary petition for relief under Subchapter V of Chapter 11 of title 11 of the Bankruptcy Code.

5.      On November 23, 2015, Ms. Diboll filed a Petition against Debtor in the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 15-11158 ("State Lawsuit"). Ms. Diboll's operative petition is attached hereto as Exhibit "A".[1]

6.      Ms. Diboll brought suit against Debtor to recover damages suffered as a result of Debtor's wrongful termination of Ms. Diboll on November 24, 2014.

7.      Ms. Diboll has litigated her claim for many years. Discovery was completed long ago. The State Lawsuit is fully trial ready; indeed, all that remains to resolve the case is trial. Such trial is presently set for October 25, 2021.

## Relief Sought

8.      By this Motion, Ms. Diboll seeks to modify the automatic stay, in order to permit her to (1) direct action Debtor's employment practices insurance carrier, AIG,[2] by amending the petition in the State Lawsuit to add AIG as additional defendant and proceed with trial of the State Lawsuit against Debtor and AIG on the above-referenced trial date of October 25, 2021; or (2) in the alternative should leave to amend not be granted, file a separate direct action against AIG alone, prosecute her claim, and collect the insurance proceeds to which she is entitled. Movant also seeks authority, to the extent it may be necessary, to execute, levy, and collect from Debtors' insurance carrier such judgment as may be obtained by Ms. Diboll in the State Lawsuit or a subsequent direct action against the insurer alone.

9.      Upon information and belief, the insurance policy provides enough coverage to satisfy any judgment against the Debtor. To the extent the policy does not, in fact, cover Ms. Diboll's damages, Ms. Diboll reserves her right to file a deficiency claim against Debtor.

---

[1] Debtor is the sole remaining defendant in the State Lawsuit; all other defendants have been dismissed. Ms. Diboll's remaining claims are as follows: bad faith breach of contract, detrimental reliance, and unjust enrichment.
[2] Specifically, Ms. Diboll references AIG's policy number 09-706-31-07 produced by Debtor in the underlying State Lawsuit at RENRX 0006346-6446.

**Basis for Relief Requested**

10.     As a general rule, the filing of a bankruptcy petition operates to stay litigation involving pre-petition claims against the debtor. *See* 11 U.S.C. § 362(a)(1). However, where an interested party demonstrates "cause," the stay may be modified. *See* 11 U.S.C § 362(d)(1). "Cause" under Section 362 of the Bankruptcy Code "is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). The party opposing the relief from the automatic stay bears the burden of proof. 11 U.S.C § 362(g) ("[T]he party opposing [relief from the stay] has the burden of proof on all . . . issues [other than that] of the debtor's equity in property."); *see also In re Moore & Moore Trucking, LLC*, No., 2020 WL 6122753, at *8 (Bankr. E.D. La. Sep. 14, 2020) ("The burden of proof when resolving a motion to terminate the stay for cause rests with the Debtor.").

11.     Although the Bankruptcy Code does not define "cause," courts examine the following three factors in determining whether cause exists for a stay to be modified: (1) whether any great prejudice to either the bankruptcy estate or the debtor will result in prosecution of the lawsuit; (2) whether the hardship to the non-debtor party by the continuation of the automatic stay outweighs the hardship of the debtor; and (3) whether the creditor has probability of success on the merits of his/her case. *Intl'l Bus. Machine v. Fernstrom Storage and Van Co. (In the Matter of Fernstrom Storage and Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984); *In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). Courts in this circuit have utilized this method. *See In re LeBlanc*, No. 20-11412, 2020 WL 6588413, at *2 (Bankr. E.D. La. Nov. 10, 2020); *see also In re Samshi Homes, LLC*, No. 10-37643-H3-11, 2011 WL 3903054, at *3 (Bankr. S.D. Tex. Sep. 6, 2011) (citing *In re Namazi*, 106 B.R. 93, 94 (Bankr. E.D. Va. 1989)). Here, all three prongs

weigh in favor of modifying the automatic stay to allow the State Lawsuit to proceed to judgment.

12.     First, permitting Ms. Diboll to pursue her state-law employment action in state court will not greatly prejudice the Debtor and its estate. Debtor's counsel has represented to undersigned counsel that Debtor's insurer is paying for the defense of the State Lawsuit. Proceeding to trial in the State Lawsuit therefore will not prejudice Debtor. Further, to satisfy any judgment in Ms. Diboll's favor, Ms. Diboll intends initially to pursue only the proceeds of Debtor's employment practices insurance carrier, AIG, which will negate any impact on Debtor's estate. Therefore, modifying the automatic stay may not have any adverse effect on Debtor's bankruptcy case.

13.     Courts have found that cause to modify the stay exists where the debtor has insurance coverage to cover the cost of defense and any judgment rendered against the Debtor in the underlying lawsuit, as there would be no resulting disruption to the estate. *See Foust v. Munson S.S. Lines*, 299 U.S. 77, 87-88 (1936) (concluding that the "bankruptcy injunction" should have been modified to permit wrongful death suit to go forward since the claimant was only interested in establishing liability under insurance policy and because the reorganization proceeding would not be adversely affected); *In the Matter of Fernstrom Storage and Van Co.*, 938 F.2d at 736 (affirming bankruptcy court's decision to lift stay to permit action to proceed in another forum reasoning that the "debtors [. . .] suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties or guarantors"); *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982) (affirming lift of stay to allow civil action to go forward since bankruptcy estate was not jeopardized, as insurer assumed full financial responsibility for defending litigation); *In*

4

*re Robertson* 244 B.R. 880, 882-84 (Bankr. N.D. Ga. 2000) (lifting stay on state court tort claim involving a motor vehicle accident where the debtor was insured by State Farm Insurance).

14.     The Court should modify the automatic stay to allow Ms. Diboll to continue the State Lawsuit since no great prejudice to the Debtor or the bankruptcy estate would result.

15.     Second, in deciding whether Ms. Diboll will be more prejudiced than Debtor if the stay is not modified, the Court should look to the "simple economics of the situation." See In re Robertson 244 B.R. at 883. Here, Ms. Diboll seeks a money judgment because she has suffered harm as a direct result of her wrongful termination at Debtor's hands. AIG's insurance policy—for which premiums were paid—was purchased for such occurrences, among others. To the extent that Ms. Diboll obtains a judgment, she will pursue the AIG insurance policy proceeds. See id. Allowing Ms. Diboll's State Lawsuit to go forward would neither grant her a superior position over other creditors nor have any prejudicial impact on such other creditors because they are not entitled to the proceeds of the AIG employment practices insurance policy. There would thus be little to no impact on the Debtor, its estate, or on the administration of the bankruptcy case if Ms. Diboll obtained judgment in the State Lawsuit.

16.     On the other hand, Ms. Diboll will be greatly prejudiced if the stay is not modified. Ms. Diboll suffered significant damages as a result of her wrongful termination, which have continued to this day unrecovered. Yet, Debtor "is not faced with a financial burden as a result of [its wrongful termination of Ms. Diboll]." *See id.* If the stay were not modified, the only party likely standing to benefit financially would be AIG, who collected premiums for the policy but would be able to avoid paying any proceeds on the policy to Ms. Diboll. Moreover, the October 25, 2021 trial date in the State Lawsuit is at least Ms. Diboll's fifth trial date, and Ms. Diboll should not be further delayed in liquidating her claim.

17.     Third, even a slight probability of success on the merits may be sufficient to support modifying an automatic stay in an appropriate case. *See In re The SCO Group, Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007). Ms. Diboll's chances of success *far* surpass this low bar. Debtor unsuccessfully sought dismissal of Ms. Diboll's claim for wrongful termination several times over at both the motion to dismiss and summary judgment stages; clearly, her claim is legally well-founded and not without factual support. Ms. Diboll and UTC confected a one-year employment contract, but UTC breached that contract when it terminated Ms. Diboll well before the one-year mark and without compensating her as promised. See Exhibit "A". Ms. Diboll is entitled to the amount of her contract and other damages. Indeed, because UTC's breach was in bad faith, it is liable to Ms. Diboll for all direct damages—foreseeable or unforeseeable. See La. Civ. Code art. 1997. Ms. Diboll is represented by experienced, capable attorneys in the State Lawsuit. She is likely to succeed at trial.

18.     Bankruptcy courts have also considered other factors in determining whether to modify the automatic stay to allow litigation to proceed in another forum, including:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re LeBlanc*, No. 20-11412, 2020 WL 6588413, at *3 (Bankr. E.D. La. Nov. 10, 2020); *see also In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (referencing factors set

forth in *In re Curtis*, 40 B.R. 795, 799—800 (Bankr. D. Utah 1984)). These factors need not be assigned equal weight, and only those factors relevant to the particular case need to be considered. *In re U.S. Brass Corp.*, 176 B.R. at 13 (citing *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)). "Courts have held that the interests of judicial economy and efficiency are 'best-served by liquidating claims before the court that knows the parties and the factual and legal issues and can schedule final hearings in short order.'" *In re LeBlanc*, 2020 WL 6588413, at *4 (quoting *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010)).

19.     Here, modifying the stay will allow Ms. Diboll's State Lawsuit to continue in a timely fashion to its conclusion, resolving the long-standing issues between Ms. Diboll, the Debtor, and the insurer before the same judge who has overseen the case since November 2015. Ms. Diboll initiated the State Lawsuit in November 2015, and her injuries have gone uncompensated since her November 2014 wrongful termination. From filing to present, the same judge has resolved numerous motions, including multiple motions for summary judgment. The judge is therefore familiar with the legal issues and the facts of the case. Now, discovery is complete, and the case is trial-ready. All that remains in the State Lawsuit is trial, which has been set and reset at least five times and is currently scheduled for October 25, 2021. Additionally, pursuing the State Lawsuit will cause little to no interference with the Debtor's bankruptcy case, because the insurer has assumed responsibility for Debtor's defense. And any judgment is likely to be satisfied using insurance proceeds only. Given the harm to Ms. Diboll arising from any further delay in liquidating her claim and addressing her injury, the lack of harm to Debtor due to the insurer's assumption of the defense, the minimal risk of any harm to other creditors due to the insurance proceeds that likely will satisfy Ms. Diboll's damages, and the interest of judicial economy in continuing with Ms. Diboll's trial before the same judge who has adjudicated her

case for the last 5.5 years, the above-listed factors clearly weigh in favor of modifying the stay and allowing Ms. Diboll to continue to prosecute her State Lawsuit against Debtor and its insurer.

**WHEREFORE**, Ms. Diboll respectfully requests that this Court enter an order granting her relief from the automatic stay pursuant to § 362 of the Bankruptcy Code; authorizing Ms. Diboll to continue to pursue her claims in the State Lawsuit in the Civil District Court for the Parish of Orleans, State of Louisiana, against Debtor and Debtor's employment practices insurer, AIG or, to the extent necessary, pursue a separate direct action against AIG; and granting any such further relief as is just.

Dated:  May 26, 2021

Respectfully submitted,

FISHMAN HAYGOOD, L.L.P.

*/s/Tristan Manthey*
Tristan Manthey (La. Bar No. 24539)
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana  70170
Telephone:  504-586-5252
Facsimile:  504-586-5250
E-mail:  tmanthey@fishmanhaygood.com
*Counsel for Alison J. Diboll*

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

 /s/  Tristan Manthey